IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVE CARLSON, TARA CARLSON
AND KAREN PEARSON,

    Plaintiffs,

  vs.                                     CIV-S-05-0181-LKK/GGH

MONACO COACH CORPORATION,        ORDER and

    Defendant.                  FINDINGS & RECOMMENDATIONS
_____/

        Previously pending on this court's law and motion calendar for April 13, 2006, were plaintiffs' motion to compel depositions and sanctions, filed March 16, 2006, and plaintiffs' motion for terminating sanctions, filed March 22, 2006.[1] Although the discovery cutoff has passed, Judge Karlton extended the deadline for the sole purpose of having these motions decided. By order of March 22, 2006, this court ordered the parties to file a Rule 251 statement for plaintiffs' March 16th motion; however, the parties did not comply with that order. The court has now reviewed the papers in any event, and issues the following orders.

\\\\\

---

[1] If terminating sanctions are not ordered, plaintiffs request lesser sanctions.

1

BACKGROUND

Plaintiffs are purchasers of defendant's motor home who have filed this action for breach of warranty. According to plaintiff, issues in the case are whether the motor coach exhibited non-conformities, whether such non-conformities were covered by Monaco's warranty, and whether they were not repaired within a "reasonable number of attempts." Plaintiff's retained expert, Mr. Eidsmoe, was designated to testify on these matters. The complaint seeks rescission and restitution.

DISCUSSION

I. Plaintiffs' Motion for Terminating Sanctions

Plaintiffs claim that some time after March 1, 2006, defendant's counsel, Mr. Wraith, informed plaintiffs' counsel, Mr. Baker, that Monaco had retained plaintiffs' expert in this case to be an expert for defendant in another matter, and had communicated with him on logistical grounds about the instant case.[2] Plaintiffs point to an ex parte application and letter from Mr. Wraith to Judge Karlton, admitting that defendant had potentially tampered with plaintiffs' expert witness. This letter, filed March 7, 2006, requested guidance on how to proceed in order to mitigate damage resulting from defendant's conduct. Plaintiffs claim that Mr. Eidsmoe, an expert in the field of diagnosis and repair of motor homes, having owned a Monaco repair facility for over twenty years, now needs to be replaced on this case because plaintiffs have doubts about his loyalty to their position. In addition to being paid for the matter which they reference, plaintiffs contend that he may get substantially more job opportunities from defendant, and may not want to testify against defendant. Plaintiffs argue that there are no other individuals with Eidsmoe's qualifications and therefore their case is gutted. Plaintiffs seek

---

[2] Defendant's letter to Judge Karlton states that the ex parte communication between defense counsel and Mr. Eidsmoe was limited to a courtesy phone call to him to advise that he was going to be served with a deposition subpoena in this case. Defendant states in that letter that "there has been absolutely no mention whatsoever of the Carlson Matter to Mr. Eidsmoe by us or our clients."

an order of terminating sanctions pursuant to the court's inherent power.

Defendant claims that when plaintiffs informally designated Eidsmoe as an expert only five months ago in a November 11, 2005 letter, Monaco recognized his name. *Prior* to this letter, a Monaco employee had unsuccessfully tried to locate the retired Eidsmoe for an expert evaluation in another case. However, after the designation in this case, Monaco found Eidsmoe and sought his expert services in another matter. It was not until March 1, 2006, that Monaco's counsel realized that defendant's conduct with respect to this expert was improper. Counsel immediately instructed defendant to terminate its relationship with Eidsmoe. Defendant contends it has shown no willfulness or bad faith, and acknowledged its mistake immediately.

A. Standards for Terminating Sanctions

Rule 37 authorizes "a wide range of sanctions" for a party's failure to comply with discovery rules or court orders enforcing them. Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589 (9th Cir. 1983). Penalizing a party "for dilatory conduct during discovery proceedings" is discretionary. Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1102 (9th Cir. 1981) (citing Fed. R. Civ. P. 37(a)(4)).

In addition to Rule 37 sanctions, "[c]ourts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)); accord Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995) (recognizing inherent power to dismiss counterclaim for concealing discovery documents); Winn v. Associated Press, 903 F. Supp. 575, 580 (SDNY 1995) (imposing monetary sanctions for deliberately impeding discovery and willful noncompliance with document production).

Precluding evidence so that the recalcitrant party cannot support defenses is comparable to entering dismissal, which "represent[s] the most severe penalty that can be

imposed." U.S. v. Kahaluu Const., 857 F.2d 600, 603 (9th Cir. 1988); accord, Valley Engineers v. Electric Engineering Co., 158 F.3d 1051 (9th Cir. 1998). Accordingly, such sanctions are authorized only in "extreme circumstances" for violations "due to willfulness, bad faith, or fault of that party." Kahaluu Const., 857 F.2d at 603; see also Commodity Futures Trading Com'n v. Noble Metals Intern., Inc., 67 F.3d 766, 770 (9th Cir. 1995) (affirming standard and upholding sanctions in egregious circumstances).[3] Bad faith does not require actual ill will; substantial and prejudicial obduracy may constitute bad faith. B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1108 (9th Cir. 2002).

Five relevant factors also determine whether severe sanctions are appropriate:

(1) the public's interest in expeditious resolution of litigation;
(2) the court's need to manage its docket;
(3) the risk of prejudice to the other party;
(4) the public policy favoring disposition of cases on their merits; and
(5) the availability of less drastic sanctions.

Wanderer v. Johnston, 910 F.2d 652 (9th Cir. 1990) (default judgment for defendants' failure to comply with discovery); Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir.1987).

This circuit has acknowledged that "[l]ike most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just." Valley Engineers Inc. 158 F.3d at 1056. Inevitably where a court order is violated or discovery belatedly is produced, factors 1 and 2 support preclusive sanctions, and

---

[3] See also, e.g., Fjelstad v. American Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985) ("'Where the drastic sanction of dismissal . . . [is] imposed . . . the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith,'" quoting Sigliano v. Mendoza, 642 F.2d 309, 310 (9th Cir.1981); G-K Properties v. Redevelopment Agency, 577 F.2d 645, 647-48 (9th Cir.1978) (bad faith crucial in Rule 37 dismissal, citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778 (1976)); Henry v. Gill Industries, Inc, 983 F.2d 943, 946, 948-49 (9th Cir.1993) (reviewing Rule 37 dismissal under multiple factors, including willfulness, bad faith or fault); Porter v. Martinez, 941 F.2d 732, 733 (9th Cir.1991) (reviewing Rule 37 default judgment pursuant to multiple factors including bad faith); Wanderer v. Johnston, 910 F.2d 652, 655-56 (9th Cir.1990) (same).

factor 4 cuts against them. Prejudice to the opposing party and the availability of less drastic sanctions, factors 3 and 5, are most often decisive. Id. Most critical for evaluating the risk of prejudice and whether less drastic sanctions would suffice is whether the discovery violations "so damage[] the integrity of the discovery process that there can never be assurance of proceeding on the true facts." Valley Engineers Inc., 158 F.3d at 1058.

B. Analysis

Although there is no governing rule directly on point, no one disputes (at least after hearing) the impropriety of contacting the opposing side's expert during the pendency of litigation in which the expert has been retained.

Erickson v. Newmar Corp., 87 F.3d 298 (9th Cir. 1996), the case discovered by defense counsel which prompted his admission, involved another motor home case with similar claims. It sets forth the guidelines on ethical conduct involving communication with an adversary's witness, including the American Bar Association's Model Rules and Ethics Opinions. Opinion 93-378 states that although there is no model rule specifically addressing such ex parte contacts, "an attorney who engages in such contacts may violate the duty to obey the obligations of the tribunal." Erickson, 87 F.3d at 302. This opinion is based on the wording of Federal Rule of Civil Procedure 26, which defines the procedure by which an attorney must deal with an opposing party's expert during discovery:

> (A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.
> (B) A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4). ABA Formal Opinion 93-378 states that an attorney who engages in ex

parte communications with the opposing party's expert witness commits a "flagrant violation," quoting Campbell Industries v. M/V Gemini, 619 F.2d 24 (9th Cir. 1980). See also Sanderson v. Boddie-Noell, 227 F.R.D. 448, (E.D. Va. 2005) (a case involving the improper contact of an opposing party's expert and the appropriate remedies therefore).

Moreover, the careful scheduling of experts' disclosures and discovery by the district court would be for naught if the parties could back door these provisions with informal contacts of an adversary's experts. In addition, for at least part of the litigation, the parties' contacts with experts would be guarded by work product immunity and attorney-client privilege; premature contacts might well invade these privileges. Last, but not least, and as evidenced here, unauthorized expert contact may well result in a collapse of trust between the retaining party/counsel and the expert. The collapse of trust then reverberates significantly into the scheduling of the case. The last factor is true whether or not the expert was contacted with the present case in mind.

Thus, the only real question here is the appropriate sanction to be imposed. In this case, the factors of degree of prejudice suffered and the availability of lesser sanctions are inextricably intertwined.

Plaintiffs have been prejudiced. There was, in fact, a breakdown in trust between counsel and the expert such that plaintiff could not (reasonably) continue with the expert. While the expert was not contacted by Monaco for the purposes of this case, the specter that the expert would see a larger and more permanent payday if associated with Monaco in future cases, logically indicated that the expert would not focus his attentions and interests on plaintiffs' case. Plaintiffs lost an expert who had been otherwise ready to give opinions in the case favorable to plaintiff. Also, this expert was a person who had a long-time familiarity with the Monaco products at issue.

The undersigned inquired carefully at hearing, however, as to the extent of that prejudice. This case will be almost entirely determined by expert testimony. If, on the one hand,

plaintiff's expert had a nearly singular and unique expertise shared by few other persons, such that plaintiff would be hardpressed to find anyone with the same qualifications or knowledge, nothing short of terminating sanctions would be sufficient.  However, if the case is on the other end of the spectrum, i.e., any reasonably qualified Joe Blow mechanic expert can attest to the alleged deficiencies in the Monaco product, Joe Blow can be quickly brought up to speed, and the litigation can continue without much delay.

The instant case falls somewhere in between the outer parameters of the above spectrum. The undersigned inquired at hearing about the alleged defective motor coach systems most significantly at issue here — the hydraulic leveling system and electrical system. While plaintiff cannot seemingly duplicate the experience of his now fired expert because of the expert's long time working with these Monaco systems, the systems' operation and design functions are not beyond the ken of competent mechanical, hydraulic or electrical engineers. Without denigrating Monaco's product, the systems at issue do not appear to involve the proverbial "rocket science" or "brain surgery."  Plaintiffs' counsel himself indicated that but for the cost involved, he would probably be able to retain other competent experts.  And, although the scheduling of this case will be adversely affected to plaintiffs' detriment, the adversity is not irreparable.  Therefore, terminating sanctions are not appropriate; lesser, but still significant, sanctions can be imposed to alleviate most of the prejudice suffered by plaintiffs.[4]

Defendant Monaco shall pay all plaintiffs' costs associated with Mr. Eidsmoe, including his fees and counsel's fees incurred in working with Eidsmoe.  Judge Karlton has given permission for plaintiff to receive an extension to re-designate an expert to replace Mr. Eidsmoe. Costs incurred in retaining a new expert shall be limited to plaintiffs' counsel's fees and costs up to a total of five hours in locating and working with the new expert.  The new expert's fees shall be reimbursed by defendant up to a total of $5,000.  The new expert's deposition shall be

---

[4] Also, given the fact that the contact of the expert did not involve this case, and involved negligent as opposed to purposeful malfeasance, terminating sanctions appear too harsh.

completed by June 30, 2006.[5]

II. <u>Plaintiffs' Motion to Compel Depositions</u>

This motion, filed March 16, 2006, seeks to compel attendance at deposition of defendants' witnesses, including Monaco employees James Bolton and Phil Collins, and retained expert Bob Presson, all of whom reside in Oregon. Plaintiffs seek to take these depositions at plaintiffs' counsel's office in Cupertino, California, and also seek expenses for obtaining expedited deposition transcripts in time to file their opposition to defendant's summary judgment motion by April 24, 2006 (a date now inoperative), and sanctions in the amount of $6,375.00

The court will not recount the all-too-familiar charges and counter-charges about who is abusing whom with respect to cooperation in discovery. Nothing would be served by expending even more judicial resources by recounting a blow-by-blow description of the events herein. Both parties have unclean hands with respect to the deposition scheduling. Suffice it to say, that after reading the parties' presentations on the issue, and for the reasons set forth at hearing, the court will simply order the disputed depositions to take place in San Francisco no later than May 15, 2006. Again, permission to alter the discovery schedule in this particular has been received from Judge Karlton.

Should the precise scheduling of the depositions not be the subject of agreement by April 25, 2006, the parties shall file a joint letter detailing the problems no later than April 26, 2006. The court will then order the depositions to take place in Sacramento on days which the parties may not alter.

No sanctions shall issue at this time.

\\\\\

---

[5] Plaintiffs also suggested that Monaco's current counsel should be disqualified. However, disqualification is counter-productive in that the entire scheduling of the case would be disrupted. Moreover, insofar as the expert contact does not appear to be the fault of counsel, or at least the willful fault of counsel, disqualification is inappropriate. <u>See generally</u> <u>Sanderson</u>, <u>supra</u>.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for terminating sanctions, filed March 22, 2006, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS ORDERED that:

1. Defendant shall pay all plaintiffs' costs associated with Mr. Eidsmoe, including all his fees and plaintiffs' counsel's fees incurred in working with Mr. Eidsmoe. Costs incurred in retaining a new expert shall be limited to plaintiffs' counsel's fees and costs up to a total of five hours in locating and working with the new expert. The new expert's fees shall be reimbursed by defendant only up to a total of $5,000. The new expert's deposition shall be completed by June 30, 2006.

2. Plaintiffs' motion to compel depositions and sanctions, filed March 16, 2006, is granted in part and denied in part. The depositions shall take place as ordered above. No sanctions are ordered at this time.

DATED: 4/20/06                                                /s/ Gregory G. Hollows

                                                              GREGORY G. HOLLOWS
                                                              U. S. MAGISTRATE JUDGE

GGH:076 - Carlson0181.san.wpd